Case number 17-5027, Daryl Higdon v. USA Argument not to exceed 15 minutes per side Ms. Coffin, you may proceed for the appellant Good morning. I'm Jennifer Coffin, and I'm here today on behalf of Daryl Higdon, who is the petitioner appellant in this case. I'd like to reserve two minutes of my time. Very well. Thank you. The single issue presented in this case is whether Mr. Higdon's North Carolina conviction for discharge of a firearm into an occupied building qualifies as a violent felony for purposes of the Armed Career Criminal Act. If it does not, then he is eligible for relief from his unconstitutional 15-year mandatory minimum sentence. Before I get to Mr. Higdon's primary argument, I want to say a few words about mens re. I know a lot has been written about mens re in this case, about whether reckless offenses as a category qualifies violent felonies under the ACCA, about whether the North Carolina conviction has a mens re of intentional or knowingly or recklessly or something else. But this case does not rise or fall on mens re. In fact, mens re is a distraction. What this case is about is about whether the act criminalized by the North Carolina statute, by its essential elements, consists of the act that the Armed Career Criminal Act requires for an offense to qualify under the force clause. By its essential elements, the North Carolina conviction does not require a victim. But because the property is occupied, isn't there a victim in the occupied property? That is exactly the core question in this case. Does the fact that the North Carolina statute requires that the building be then occupied at the time of the discharge of the firearm, does that fact mean that the force used was against the person of another, as required by the force clause? And the answer, we know, is from North Carolina law. And the North Carolina Supreme Court has told us that the statute, by its essential elements, it uses those words, does not include an assault against a person. So the bullet doesn't have to hit anybody, right? No, Your Honor, no. Nobody needs to know inside the house that the bullet actually hit the house? Not at all. And there need not be any individual person, body, identified for purposes of conviction. The person could sleep through the whole thing inside the house. Exactly. The person could sleep through the whole thing. One of the things I think that is most interesting about the debate, really, oddly, about whether reckless offenses qualify, which is not what we're talking about. But in the recent decisions in which this court has debated whether reckless offenses qualify, it has said things to show that it is in complete agreement about the act required for the force clause. And in fact, Judge Katledge, if I might quote you. That's the one part of your rebate I agree with. In Harper, exactly, you said, quote, the force clause implicitly requires that the defendant's use of force, in fact, harm another person. And on that point, Judge Sutton totally agrees. In Verweebe, he emphasized that the force clause, quote, does not punish the use of force in the abstract. It requires a victim. It doesn't require the harm, does it? It doesn't require the attempt or threatened use of harm? Even the attempted or threatened use. I mean, that is in the ACCA, right? Exactly. It is in the force clause. The use, attempted use, threatened use of force. All right, so you don't actually have to have the harm if it's attempted or threatened. A threatened offense and an attempted offense still have victims. There's still a person on the other end of the threat. There's still a person on the other end of the attempt. Well, the attempt, I mean, it would seem, well, the use of force, we have use of force against the person of another. Yes. And there's no victim here is your position. So per, you know, both sides of the cases you mentioned, there's no use of force against the person of another. And then we have attempted use of force against the person of another and threatened use of force. Now, attempt is a specific intent crime all day long. Yes, it is. And that means, I mean, ironically, in light of Verweebe, you must specifically intend to shoot the person. Would that be your view? Well, if we're talking about mens rea, then yes. Right. I mean, there's a mens rea requirement for intent that is not present the same way for use. My position is that even if an attempt requires specific intent, that doesn't answer the question whether the act criminalized, the act, not the mens rea, has a person as the victim. And a specific intent crime has a person as a victim. I don't know. I mean, let's say that, again, the same person is sleeping in the house and somebody shoots in there actually trying to get that person, specifically intending that. They fail to hit the person. The person, again, doesn't wake up and the person drives off. I mean, that is a completed offense of attempted use of force against that person. Right. Well, you've just described the factual circumstances of a particular offense. The issue here is whether the essential elements of the North Carolina conviction, by its terms, requires that there be a person harmed or a victim on the other side of it. What I'm saying is I don't see the harm. I don't really see a harm requirement for attempt, but I do see a very stringent mens rea requirement. Okay, so let's talk about that. It's okay. I feel like, well, just before we move on to mens rea, because it looks like we're going to have to step just a little bit into that quagmire. And, you know, the tricky thing about these cases is there's mens rea as to two different things.  There's mens rea as to the employment of force and mens rea as to the consequences of that employment. And it's really important to keep them straight. And so we might want to just kind of reference this to you. I'm going to go there. But before I do, I just want to point out in our briefs, and it wasn't completely clear as it was written in the briefs, but in our briefs, there are actually five cases that deal with occupied buildings. And five circuits have held. And two of them were actually looking at this North Carolina statute. Five have held that discharge of a firearm into an occupied building does not qualify because the act doesn't encompass the force against the person of another. And I'm glad we're going to actually step a little bit into mens rea because you're exactly right. The North Carolina statute has been interpreted by the North Carolina Supreme Court to require only that the defendant have reasonable grounds to believe that a person or the building might be occupied, might be occupied. That's an objective test? That is an objective test. And the beauty of this is we don't even have to worry about whether this court sticks with its decision in Verweeby about recklessness or does something completely different because that's not even a recklessness standard. Recklessness, and we know this from Voisin itself. This is so fun. I get to use Voisin in my favor. Voisin says, let me make sure I read it exactly. Recklessness, a person acts with recklessness when he, quote, disregards substantial risk of harm of which he is aware. That's a subjective awareness. The North Carolina statute doesn't require that the defendant be subjectively aware. And in fact, the best case to show this is the case State v. Everett. That's the case that involves the nightclub, the Flying Salsa. And in that case, the court itself looked at the objective evidence, some of which didn't even happen the night of the shooting. It was one of those where the lights were dim. There were a lot of people on the streets. The club was closed. But usually the club is open that late on other days. These are objective pieces of evidence that the court looked at to hold that the jury reasonably found that the defendant had reasonable grounds to believe that the building might be occupied. The standard, which is also very interesting, is that the standard, this objective standard, isn't even a knowing standard. A knowing standard requires what? And this is just from the model penal code. Aware that his conduct is of the required nature or that the required attendance circumstances exist. So even if we had, even if this court were to hold that shooting into an occupied building necessarily means use of force against the person of another, Mr. Higdon still prevails because the North Carolina statute's mens re isn't even reckless. Are we talking use, attempted use? Which one are we talking about right now? Under the 924 or whatever version of it. You mean under the ACCA? I'm saying this objective standard isn't recklessness, it isn't knowing, it isn't intentional. Because each one of those requires subjective awareness. It's not going to satisfy either use or attempted use. No, it will not satisfy. It's really almost basically a negligent standard. It comes very close to a negligent standard. In fact, but really when you look at an actual negligent standard in the criminal law, it's actually a little bit closer to strict liability, which is we could debate that forever. But it's at least closer to a negligent standard. So you, I mean, you say it's not attempted because there's just really no mens re here, right? And what about threat? What's your take on that? Well, a threat has to be, well, a threat, if you're talking about what a generic threat is, a threat would require some form of intent to threat. Or, well, I would say intent. That's where I would rest. Similar to the attempted use case law that says threatening bad things is a specific intent crime? You have to say this, you know, intending that the person receive it as a threat rather than a, you know, misunderstand it or whatever. Well, I think, well, I have to say, I don't have it at my fingertips. And I'd be glad to submit that if you wanted. But I do know from my experience with this question, I can say off the top of my head that there is case law  to threaten the recipient of the threat. And, again, I have to go back that there has to be a recipient of the threat. See, even if there isn't a specific intent requirement, and there is some case law in the Hobbs Act robbery area, I will tell you, where the perception on the part of the victim is really what determines whether the threat was made, there still has to be a victim. So we don't even, we're still back to the place where we were. I mean, it's an analog to, you have to have a hearer. Yes, you have to. You can't just threaten in space or something. Exactly. Somebody has to hear it. Right, if there's a, it has to do with the forest and the trees and the sound, but we're definitely not there. And so for these reasons, Mr. Higdon would ask this court to reverse the decision of the district court, or, unless you have any more questions. Any further questions? Oh, remand for a vacated sentence and remand for resentencing. Thank you very much. You'll have your minutes rebuttaled. Good morning. Good morning. May it please the court. I'm Luke McLaurin, and I'm here on behalf of the United States. The denial of Mr. Higdon's 2255 should be affirmed because he was properly classified as an armed career criminal. The North Carolina offense of, did you have a question, Judge Kyle? I was just, well, I'd be curious. Is it use, attempted use, or threatened use? Our primary theory is that it would fall under use. However, I would point out that Judge Wilkinson in his very powerful dissent in that Fourth Circuit case that we've been discussing did suggest that the offense might also, might also count under an attempted use or threatened use theory. But we think the most direct and easiest way to see this is under the use theory. And the reason why, I think there was a lot of discussion before that was distracting about the use of force clause. There was some discussion about whether there's a victim. If you look at the use of force clause, it doesn't require that there actually be, somebody be harmed. You know, you take the bitter with the sweet in Verweebe, and Verweebe says flat out, you have to have a victim. The force has to be against another. It doesn't say that the force has to result in injury or harm to the other. It says there must be a victim. I mean, that's verbatim. Well, there must be a victim, but the question is, does the person that you use force against, do they have to actually be harmed when you use force against them?  having a victim with respect to the use of force against the person of another means that the force must harm that person. I mean, how can you have a victim with the use of force against the person of another without harming the person of another? Because you can be using force in somebody's direction. You can be directing force against them and not actually harm them. That would still count as a use of force against the person of another. What's an example of a case where that's happened? An example of a case? I mean, take the shard-throwing incident provided in, example provided in Boisin. Somebody throws a plate against the wall. Now, that shard may hit the other person, but it may not hit the other person. In either case, force has been used. In her example, Justice Kagan's example, it hits and injures the person. In that example. And that's not just, I mean, she put that in there on purpose. I mean, if the government's position today is that you can have a victim from the use of force against the person of another with nobody getting hurt, I mean, that just takes this, I mean, that doesn't make a lot of sense to me. I'm having a hard time understanding that. Well, let me try and explain what the position is, Judge Kethledge. The position is that you can use force against another when you are volitionally employing force in the direction of another person. Against means hitting the person, not in their direction. Against means, I mean, at some point, there's got to be, you know, a bedrock bottom in this whole regime. I mean, against the person of another means you hit the person of another. The force interacts directly with the person of another, not nearby, not in the direction, interacts directly with that person. I think that that's one way of reading the word against, but I don't think that's the only way of reading the word against. I mean, what's a better way? Not one way or another way. What's a better way? A better way is reading it as a directional proposition, indicating where is the force being directed. Is it being directed against the person? Is it being directed against the property? That's, you know, like Bob Seger against the wind, right? It just depends on the context, though. Against the wind is a little different from against the person. Well, I think it's important when you look at the definition that the Supreme Court has used of force, right, that when the Supreme Court talked about being capable of causing physical pain or injury to another, it doesn't have to be force that actually causes pain or injury to another. It simply has to be capable, which suggests that the use of force in the force clause doesn't have to actually result in pain or injury to another. Certainly if it does, then it would count, but it doesn't have to result. And again, that might get to perhaps an attempted use of force, but our position here is that this statute requires the volitional employment of force against the person of another. I thought too. I guess I was wrong in Harvard. Does it require against the person of another or just against a building that's occupied? Well, it requires against a building that's occupied. And when you are directing a force in... In an occupied dwelling. But see, if there's a person, it could be a very large building, and the person could be way at one end, but if you fire the gun into any portion of the building, it may not even be close to the person, but it would still be a violation because it's a discharge of a firearm into a building that is occupied somewhere, right? I understand your concern with that hypothetical, but that is not a realistic... There's no realistic probability that North Carolina would apply its offense in that way. But that... Okay. What about the Messick case, that Court of Appeals case? Was that a case where the court held that it wasn't an essential element to assault on the person of discharging a firearm into an occupied vehicle? Actually, I would like to address the Messick case because it's been mischaracterized repeatedly by the defendant here. The holding of the Messick case was simply recognizing that under standard double jeopardy principles, an assault with a deadly weapon, which is the offense that was involved there, is a distinct offense than shooting into an occupied building because each offense involves an element that the other does not. So North Carolina's assault statute requires that bodily injury, that the person suffers serious bodily injury, and the shooting offense requires that you shoot into an occupied building. That element is not in the assault statute. The other one element is not in the shooting statute. So there's no sort of broad presumption to say that shooting offenses can never be assaults. It's simply to point out that that line has been read out of context repeatedly by the defendant here to suggest that somehow this offense doesn't involve an assault. It's just that this offense is a distinct offense from assault. In many cases, this offense will involve an assault, especially when you shoot into an occupied building and, in fact, hit somebody. And so the question is... Real quick, I mean, would you agree that this crime does not, as to the attempts, which I know is not your principal argument, this crime does not require, the North Carolina elements do not require the defendant specifically to intend to harm another with the shot? Yes. The mens rea as provided by the North Carolina courts is that you have to intentionally fire the weapon with knowledge. And I want to respond... No, no, not with knowledge. With reason to believe, which is a whole different ballgame than conscious knowledge. Well, either with knowledge or when the person themselves has reasonable grounds to believe. It's not an objective standard. It is a subjective standard. Sure it is. A person in that position has reason to believe. Yes, so that person must have that knowledge. I believe there was some confusion about that presented earlier. I don't read it... If you're saying it's subjective, I don't read it that way. As to a threat, there's no need for anyone actually to hear a threat or to feel threatened, right? Not necessarily. That means no, right? Yes. Okay. It's helpful to clean up the case and focus on... You asked about mens rea and threats cases. And I think one case that might be particularly instructive here is the Supreme Court's decision in the Alanis case. Which case was that? It was a case involving communication. So in a case involving a threat. And the Supreme Court there expressly declined to address whether recklessness would be a sufficient mens rea. But Justice Alito did suggest that in his concurrence. The Supreme Court simply just decided not to address that issue. It remains an open issue, but that's a case where it does directly address sort of mens rea elements in the context of threats. Okay, so back to use of force against the person of another. How does that turn into the use of force against a person of another? Because you're not using force just against the building. You're using force against an occupied building. You are directing force into a place in which people are in fact present. So your point is if the bullet is traveling in the same direction, I mean within some vector of where the occupant is, then that's against the person of another. Yes, if it is being directed into an area where people are present, then that force is being directed against another. What kind of vector are we talking about? I mean, I'm not trying to be flippant, but let's say it's a 40, they're 40 degrees off, still striking the structure, but they're 40 degrees off from where the person was located. I mean, how far does it go as opposed to a test where you'd actually have to hit the person? Well, I think the issue is have they directed it into an area where people are present? And, I mean, if they've directed into it, but they've missed, they have still sort of used force in that toward another. They just unsuccessfully used force, if that makes sense, which would count as a, maybe in that case it would be an attempted use of force. Again, the statute encompasses use or attempted use. Yeah, okay. I think the Fourth Circuit has ruled on this issue, and I know you like the dissent by Judge Wilkinson, but this is a North Carolina statute. We're not, North Carolina statutes are not routine for us to interpret, but they are for the Fourth Circuit. Should we be somewhat reluctant to create a circuit split by going against an issue that the Fourth Circuit has ruled upon? The court shouldn't be reluctant when the Fourth Circuit has misinterpreted federal law, the requirements of the use of force clause, as requiring a specific targeting requirement. That would essentially require a purposeful or intentional mens rea with respect to every use of force clause offense. This court has never held that, and especially after Boisin and Verweeb, that is not the law in this circuit. So to the extent that the Fourth Circuit has misinterpreted the use of force clause, its analysis is really not persuasive. And we would urge the court instead to follow the analysis that was used by the Seventh Circuit in the Curtis case, which involved a statute very similar to this, where there was, the statute required both actual occupancy and knowledge or constructive knowledge of that occupancy. And the Seventh Circuit said that in that kind of situation, you do have use of force against the person of another. And I know opposing counsel cited several cases from other circuits. All of those cases involve statutes either where occupancy was not required. It seems like the government is just writing, as in Verweeb, is just writing against the person of another out of this statute. It's a restrictive clause. It means something. And here, I mean, there it had to do with the mens rea, but here it has to do with just having a victim. I mean, Verweeb said you must have a victim. Verweeb said that. Individuals who are inside buildings that have been shot at are victims of that offense. That's a North Carolina crime. And that's where your argument goes down. Well, I think the issue is that this Court has consistently said that whether the element is specifically listed in the statute is somewhat irrelevant under the use of force clause as long as the commission of the offense itself involves the use, attempted use or threatened use of force. This Court has been consistent in that. If you look at the... The use of force somehow has to be baked into one of the elements. Fair? Yes. And here there is a use of force, a discharge of a firearm. Well, the use... This whole thing, the whole thing has to... Use of force against the person of another. That whole phrase, whatever it means, all that meaning must be captured within elements in the crime. Fair? Must be captured within the offense. Yes. And the offense does require people to be present in the location where the force is targeted. Right. But, no, it... But that... Just being present doesn't mean you're a victim, does it? It means that force has been directed against you. If you're in an area where force has been directed... I mean, yes or no? Yes or no? Are you a victim if you're just present when the force hits the building? Yeah. As a matter of... The elements of this offense? Yes, you are a victim. You are a recipient of that force that has been directed into the area in which you are present. You may not have actually been injured, but that doesn't mean you're not a victim. In fact, I think it's important to look at how North Carolina courts have interpreted this statute. They've consistently said that this statute is designed to protect people. The statute doesn't say and the person has to be aware of it and be frightened or whatever adverse consequence you're implying victimhood from. Well, the person... He's got to hit the building, you know, and somebody's got to be in there. That's all. There's no sort of, you know, mens rea with the person inside in terms of what they have to think or feel. Is there? There is no requirement as to what the individuals inside the building have to feel, but there is a requirement that the firearm be discharged into the building while people are, in fact, present in it. And the defendant has to do so intentionally and he also has to know or have constructive knowledge that people are, in fact, inside the building. It's our contention that in doing so, he will have volitionally employed force against the person of another, namely the people inside the building. That's what's required under the Use of Force Clause and for that reason, we submit that this offense counts. Okay. Unless there are other questions? All right. Thanks for your patience. Thank you. Rebuttal? I do have two or three very quick points. One is I want to make sure it's clear that Mr. Higdon does not assert that there has to be some kind of injury to a person in order for there to be a victim or that there has to be harm to a person in order for there to be a victim. A person can be a victim because of their perception of the force being directed at them. So this court can actually hold there is no victim even if we assume that there is no injury. There has to be some sort of perception of the harm. That's what makes someone... Well, I mean, doesn't that... Does that potentially create a problem for you? I mean, they're going to presumably in most cases they're going to be aware at some point that somebody shot into their house. Well, there has to be an immediate perception of harm. Where do you get the immediacy thing? Well, that's what the person... That's what against a person means. We're talking about a body in time at the time of the force being exerted. But we can actually move away from... Well, before I move away from that, I also want to sort of correct something which is that the cases that we cite that involve occupied buildings are actually in those state statutes it's required that the building be occupied. And yet the courts of appeals held that there was no force used against the person of another. In Ford, Kansas statute, it was required that the building be occupied. The Fifth Circuit, Alfaro, it was required that the building be occupied. The district court was actually incorrect when it said that the building did not have to be occupied. But the case law is clear that the building has to be occupied. And what the Fifth Circuit said in that case was that in some cases the building might not be occupied. But in fact, one of those class four felonies was an occupied building. The Ninth Circuit in Narvaez-Gomez, although it decided the case on men's rate grounds, it said that the act need only be directed toward the dwelling or building. And under that statute, the building had to be occupied. The last thing I'd like to point out is the case, and I believe, Judge Griffin, you might have been talking about this case. I'm not sure. Cannady is the state case that involves a defendant who actually intentionally pointed the firearm away from people in order to avoid harming them. And the bullet went into the exterior of the building. So under North Carolina law, into doesn't mean into. Into means at. It also means against, like crashing into a tree. And so the bullet can just go to the exterior of the first floor of a 10-story building, and your person could be up on the 10th floor, and there could still be a conviction. The last thing is about men's rate, and I have to go back to that. Even if a threat could be conveyed recklessly, because this statute has an objective test, a reasonable grounds to believe that the building might be occupied, that doesn't even qualify as reckless. For these reasons, again, we ask that this Court reverse the district court fake hate Mr. Higdon's sentence and remand for resentencing. Thank you very much. The case will be submitted. We call the next case.